# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FURN-LEE SALOMON,** | **Civil Action No. 17-426 (SDW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **PATRICK NOGAN, et al.,** | |
| **Respondents.** | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Furn-Lee Salomon ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction (ECF No. 1). The State filed a response to the petition (ECF No. 14), to which Petitioner has replied. (ECF No. 17). For the following reasons, this Court will deny the petition and deny Petitioner a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following summary of the factual basis of this matter:

> Tried by a jury, [Petitioner] was found guilty of the murder of Fletcher Brown [in violation of N.J. Stat. Ann. § 2C:11-3(a)(1)] and (2), and third-degree possession of a weapon for an unlawful purpose [in violation of N.J. Stat. Ann. § 2C:39-4(d)]. On the murder charge, [Petitioner] was sentenced to a forty-year term with a thirty-year parole ineligibility period, and to a concurrent five-year term on the weapons conviction. . . .
>
> This criminal episode involves the brutal beating of Fletcher Brown by a gang of about ten people including [Petitioner]. According to the State's proofs, in the afternoon of September 4,

1996, Kanika Taylor met up with her uncle, Fletcher Brown, and his girlfriend Yvonne, both of whom had been drinking. En route to Brown's home, the three walked together, stopping at a liquor store where Brown bought a six pack of beer. They then proceeded to the Jefferson Park area of Elizabeth where they encountered [Petitioner] and Andre Vilkings,[1] who had been sitting on the front porch or standing in front of a gray house on the same street conversing with each other. [Petitioner] had bandages on his face incurred in an earlier altercation. In the immediate area were a group of juveniles smoking marijuana and sitting on milk crates in the middle of the street that had been blocked off by wooden barricades. Some of the juveniles were selling cocaine.

When Yvonne approached, [Petitioner] asked if she would like to buy drugs, but she did not respond. Brown, however, told [Petitioner] "[y]ou have nothing to say to my girlfriend." Immediately, an argument ensued among [Petitioner], Vilkings[,] and Brown. Vilkings swung at Brown, hitting Brown in the face with his fist, causing him to move backwards and bump into [Petitioner], knocking off [Petitioner]'s bandage.

The scene then became chaotic. [Petitioner] and Vilkings rushed at Brown, kicking and punching him, forcing him into the street. The juveniles who were in the street joined [Petitioner] and Vilkings and began kicking, punching[,] and beating Brown all over his body. Brown was stomped repeatedly and fell to the ground.

The assault on Brown escalated, and his attackers began using pieces of the wooden barricades to beat him while lying on the pavement. These wooden planks measure ten to twelve feet in length and weighed approximately thirty pounds. Vilkings pushed a barricade onto Brown, which broke into pieces. [Petitioner] picked up a piece of the broken barricade and hit Brown in the arms, shoulders, neck[,] and head. Vilkings picked up a bicycle and slammed it down, while [Petitioner] did the same with another bike, striking the back of Brown's head, near his neck.

Throughout the beating, which lasted about five minutes, Brown remained on the ground, trying to protect himself. One of the assailants decided Brown was beaten enough and tried to drag him to the curb. After the beating, Brown managed to stand up

---

[1] Andre Vilkings at times in the state court record was also referred to as Vilkings Andre. Because it is not clear from the record which is the correct name, for the sake of consistency this Court will use "Andre Vilkings," the version Petitioner uses in his petition, throughout this opinion. (*See, e.g.,* Document 1 attached to ECF No. 1 at 11).

before collapsing and going into convulsions on the ground. Vilkings and [Petitioner] left the scene, riding the same bicycles they used to assault Brown, while the juveniles fled on foot.

Shortly thereafter, emergency medical services (EMS) arrived at the scene and found Brown lying on his back amidst the shattered barricades. Brown gave no physical response upon initial examination. He had no pulse, no blood pressure[,] and took only four breaths per minute, leading EMS to consider Brown clinically dead. After lifesaving measures failed, Brown was pronounced dead at the hospital at 4:49 p.m.

An autopsy revealed that Brown had multiple defensive wounds and two pattern areas of contuse abrasions on his chest. The enlarged lymph nodes around his liver were consistent with long-term drug use. In fact, two vials of cocaine were found in Brown's pocket. He showed no signs of hypertension. On Brown's scalp, above his ear, was a small area of hemorrhage, consistent with blunt force trauma to the victim's head. His brain was swollen.

Both prosecution and defense experts agreed that Brown's death was caused by brain swelling, which, in turn, was caused by a hemorrhage from a small tear in a blood vessel in his brain. This tear or rupture occurred in a pre-existing weakening, delicate "out pouching" or bubble of the blood-vessel wall known as a berry aneurysm.

Berry aneurysms are not uncommon. They can rupture from an episode of increased blood pressure, which can be caused by cocaine use, by lifting a heavy object, or by a fight. Head or neck trauma can cause [a] rupture, as can a sudden hyperextension of the neck resulting from either a punch to the face or a blow to the neck. One punch to the face could suffice to cause [a] rupture. Aneurysms can also rupture spontaneously, usually preceded by symptoms such as stomachaches, headaches, or vision problems. On the other hand, individuals with berry aneurysms can live their entire life without [a] rupture.

The experts disagreed as to the cause of the rupture of Brown's aneurysm. The State's expert, Dr. Graciela Linares, who performed the autopsy on Brown, concluded that the rupture was caused by trauma. Evidence of a serious blunt trauma became visible during the autopsy. Near the spine, Brown sustained trauma deep in the skeletal muscles of his neck. This discovery lead Dr. Linares to conclude that the neck trauma, as well as some head trauma, caused the tear and rupture of the berry aneurysm. Dr.

3

Linares further explained "a blow to the neck in that area shakes the head" in a manner "similar to what we call shaken baby syndrome."

The defense expert, Dr. Daniel Perl, disagreed, concluding that neck trauma would not cause the aneurysm to rupture, absent either a skull fracture or detectible brain contusion. Rather, he opined that Brown's aneurysm ruptured from increased blood pressure resulting from either the stress of the attack or possible cocaine use earlier that day.

[Petitioner] admitted that he was present, but denied taking part in the beating. Instead he [testified that] he tried to help Brown and to prevent Vilkings from hurting Brown. According to [Petitioner], Vilkings pushed him, telling him "to get the F out of the way." [Petitioner testified that he] complied. After his bandage fell off, [Petitioner] went inside to fix the dressing.

The jury credited the State's account and convicted [Petitioner] of Brown's murder and the related weapons offenses.

(Document 4 attached to ECF No. 14 at 1-6).

Following his conviction and sentence, Petitioner appealed. (*Id.*). On appeal, the Appellate Division affirmed his conviction, but remanded for the entrance of an amended sentencing judgment as the Appellate Division determined that the weapons offense should have merged for sentencing purposes, leaving only Petitioner's 40 year murder sentence in place. (*Id.* at 25-27). Petitioner then filed a petition for certification, which the New Jersey Supreme Court denied in July 2006. (Document 7 attached to ECF No. 14).

On or about August 30, 2006, Petitioner filed a petition for post-conviction relief (PCR) in the state trial court. (ECF No. 1 at 4). Following the appointment of counsel, briefing, and multiple hearing dates, the state trial court denied Petitioner's PCR petition by way of an opinion and order entered on July 23, 2013. (Document 17 attached to ECF No. 14). Petitioner appealed, and the Appellate Division affirmed the denial of PCR relief in all respects on April 7, 2016. (Document 25 attached to ECF No. 14). Petitioner then filed a petition for certification, which the New Jersey

Supreme Court denied on December 12, 2016. *See State v. Salomon*, 228 N.J. 443 (2016). Petitioner's current habeas petition followed.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When

reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Analysis**

**1. Petitioner's Jury Instruction Claim**

In his habeas petition, Petitioner first argues that the trial court's jury charge as to causation denied him Due Process. That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). Habeas relief is therefore available based on an allegation that a petitioner's jury instructions were improper only when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). A court reviewing such a claim must consider the challenged jury instruction in the context of the entire charge and the petitioner's trial as a whole. *Duncan*, 256 F.3d at 203. That the challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief, a petitioner can only prevail on such a claim by showing that the instruction rendered her trial fundamentally unfair. *Id.*

Petitioner contends that the trial court's murder causation instruction was so flawed as to deny him Due Process because it wasn't tailored to the facts of his case, including Petitioner's

testimony that he was not involved in attacking the victim.  In relevant part, the trial court charged

the jury as follows with regard to the murder charge:

> In this case, the State has presented evidence that it claims has proved beyond a reasonable doubt that [Petitioner] was one of eight individuals who attacked Fletcher Brown on September 5, 1996, thereby causing his death.  It is the State's position that [Petitioner] is guilty of murder because he either committed the crime by his own conduct or he was acting as an accomplice in the commission of that crime.  It is [Petitioner]'s position that he did not hit or kick Mr. Brown and he was not involved in the attack, in any way.
>
> [The Court then explained accomplice liability under New Jersey law.]
>
> In the first Count of the indictment, [Petitioner] is charged with the crime of murder in that he allegedly, on or about September 5, 1996, in the City of Elizabeth, purposely and/or knowingly did cause the death of Fletcher Brown and/or purposely or knowingly did inflict serious bodily injury upon Fletcher Brown which resulted in the said Fletcher Brown's death.
>
> A person is guilty of murder if he, one, caused the person's death or serious bodily injury that then resulted in the victim's death, and [Petitioner] did so purposely or knowingly.
>
> In order for you to find [Petitioner] guilty of murder, the State is required to prove each of the following elements beyond a reasonable doubt:
>
> One, that [Petitioner] caused Fletcher Brown's death or serious bodily injury that then resulted in Fletcher Brown's death[; a]nd, two, that [Petitioner] did so purposely or knowingly.
>
> [The trial court then explained the purposely and knowingly standards, and how they applied in both direct and accomplice liability.]
>
> The last element that the State must prove beyond a reasonable doubt is causation.  The State must prove beyond a reasonable doubt that [Petitioner]'s conduct or in the case of accomplice liability that the principal's conduct caused Fletcher Brown's death or serious bodily injury resulting in death. Causation has a special meaning under the law.  To establish causation where the State alleged that [Petitioner] was acting as an accomplice to

murder, the State must prove two elements beyond a reasonable doubt:

> One, that but for the principal's conduct, the victim would not have died, and[, t]wo, that the victim's death was within [Petitioner]'s design, or contemplation, or involved in the same kind of injury or harm as that contemplated, and was not too remote, accidental in its occurrence, or too dependent on another's volitional act to have a just bearing on [Petitioner]'s liability or on the gravity of his offense. In other words, the State must prove beyond a reasonable doubt that Fletcher Brown's death was not so unexpected or unusual that it would be unjust to find [Petitioner] guilty of murder as an accomplice.

> You have heard that Fletcher Brown had a preexisting medical condition, a brain aneurysm. If you find that Mr. Brown's death resulted from preexisting medical conditions, independent of the injuries received as a result of the alleged attack, then you must find [Petitioner] not guilty. If you find that Mr. Brown died as a result of prior medical conditions being exacerbated or made worse by the alleged attack, you are instructed that criminal liability is not lessened because the victim is not in excellent health.

> In other words, if you find beyond a reasonable doubt that [Petitioner]'s conduct or the conduct of a principal that [Petitioner] acted as an accomplice to, accelerated or worsened any preexisting medical condition or illness and meets the other conditions of causation, then you should find [Petitioner] caused Mr. Brown's death.

(Document 36 attached to ECF No. 14 at 53-63).

On direct appeal, the Appellate Division rejected Petitioner's contention that this charge did not adequately explain causation, and found that the charge more than sufficiently conveyed the various versions of the facts put forward by the parties at Petitioner's trial. Having considered the causation charge in context, this Court concludes that the jury charge as to murder in no way rendered Petitioner's trial fundamentally unfair. Contrary to Petitioner's assertions, in the charge the trial court directly referenced both of the chief contentions Petitioner had raised factually at trial – that he had not actually participated in the attack, and that in any event the victim's death

was not the result of the attack but rather resulted from a preexisting medical condition. The trial court more than adequately tailored the charge to Petitioner's contentions, and explained to the jury how it should find if it found either of Petitioner's factual contentions accurate. Because it is clear that the jury charge was tailored to the facts of Petitioner's case and addressed the various theories of the case put forward by Petitioner and the State, the jury charge in this matter was not capable of "so infecting" Petitioner's trial such that it was rendered fundamentally unfair, and the charge is therefore insufficient to warrant habeas relief. *Duncan*, 256 F.3d at 203. As such, the state court's rejection of Petitioner's jury charge claim was neither an unreasonable application of relevant federal law nor the facts of Petitioner's case, and Petitioner is not entitled to relief on this basis.

**2. Petitioner's Sufficiency of the Evidence Claim**

Petitioner also asserts that the trial court erred in denying his motion for a judgment of acquittal, and in doing so essentially challenges the sufficiency of the evidence as to his purposeful or knowing murder conviction. When a petitioner presents a claim challenging the sufficiency of the evidence against him, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction for insufficiency of the evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the

Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.* So long as a rational fact finder could find all of the essential elements of the charged crimes beyond a reasonable doubt given the benefit of all reasonable inferences and viewing the facts in the light most favorable to the State, a habeas claim based on the sufficiency of the evidence must therefore fail.

On direct appeal, the Appellate Division rejected Petitioner's challenge to the sufficiency of the evidence, noting that

> [t]he record in this case contains ample evidence that [Petitioner] violently assaulted and beat Brown. He and Vilkings "rushed" Brown, and together with a gang of nine others, brutally punched and kicked the victim. While Brown was lying on the ground defenselessly, [Petitioner], individually, "pick[ed] up a piece of the barricade, [and] hit[] [Brown]" on the "[a]rms, shoulders, neck, head, all up in this region [indicating the shoulder and above.]" Several witnesses also saw [Petitioner] "just pick[] up the bike and just slam[] it down [on Brown]." The bicycle was used to "hit [Brown] all over his body," "parts of his face, his chest, and his stomach." In fact, Brown's niece, Taylor, saw [Petitioner] hit her uncle "[o]n the back of his head" with a bicycle.

(Document 4 attached to ECF No. 14 at 17). Given this ample evidence that Petitioner engaged in a brutal attack upon Brown, coupled with the State's expert's testimony that the beating ultimately caused the rupture of Petitioner's aneurysm, it is clear that a rational fact finder could easily have found that Petitioner engaged in the purposeful or knowing killing of Brown, either directly or as an accomplice to one of the other men who struck and assaulted Brown, and Petitioner's contention that there was insufficient evidence of his guilt is thus patently without merit. Because the evidence in this matter was clearly sufficient, the Appellate Division's rejection of Petitioner's

claim was neither contrary to nor an unreasonable application of the relevant Supreme Court caselaw, nor did it involved an unreasonable application of the facts evinced at Petitioner's trial. Petitioner is therefore not entitled to habeas relief on his sufficiency of the evidence claim.

### 3.  Petitioner's Evidentiary Claims

Petitioner next contends that the trial court erred in admitting certain testimony during his trial, including testimony which he alleges amounts to improper prior bad act testimony.  Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), claims challenging the admissibility of evidence are normally considered questions of state law which are not cognizable in habeas corpus.  *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009).  A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary issue only where he can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [her] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'"  *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)).  "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.*

(citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

In this matter, Petitioner challenges the admission of two pieces of evidence which he argues amount to evidence of his prior bad acts which should not have been admissible under the New Jersey evidentiary rules. Specifically, Petitioner challenges the testimony of one witness, James Romulus, who testified that he recognized Petitioner, despite the bandage that had been on his face, because he had seen Petitioner and others on the same street "selling stuff," which Petitioner contends obviously connected him to the selling of drugs, and the testimony at trial that, just prior to the attack, Petitioner asked the victim's girlfriend if she wanted to purchase drugs, a comment that ultimately led to the group assault of Brown when he rebuffed Petitioner's offer. The Appellate Division rejected both arguments, finding that Romulus's testimony was admissible as it went directly to the ability of Romulus to identify Petitioner as one of Brown's attackers based on his familiarity with Petitioner, and that the testimony regarding Petitioner's attempts to sell drugs to the victim's girlfriend was admissible res gestae evidence as it was part and parcel of the criminal event with which Petitioner was charged. (Document 4 attached to ECF no. 4 at 19-23).

Petitioner has presented the Court with no Supreme Court case to which this decision was contrary, nor a case which the state courts unreasonably applied. As the Third Circuit has observed, there is no Supreme Court decision which clearly established that the admission of other crimes evidence "constitutes a violation of federal fair trial rights. Importantly, the most relevant Supreme Court cases suggest the contrary. *See, e.g., Estelle*[, 502 U.S. 62] (allowing evidence of

prior injuries in a trial for infant murder, and refusing habeas relief for a deficient limiting instruction); *Greer v. Miller*, [483 U.S. 756 (1987)]; *Spencer v. Texas*, [385 U.S. 554] (1967)] (rejecting a due process challenge to a state rule admitting evidence of prior similar crimes when the judge gives a limiting instruction)." *Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). Because Petitioner has not shown that the Appellate Division's ruling was contrary to or an unreasonable application of relevant Supreme Court decisions, he could only be entitled to habeas relief if the admitted evidence in this matter denied him a fundamentally fair trial. Petitioner has made no such showing. As the state court noted, the offer to sell drugs to Petitioner's girlfriend was not "other crimes" evidence – it was part and parcel of the same criminal episode for which Petitioner was tried – his offer of drugs to her ultimately led to the confrontation between himself and the victim which ended with the brutal attack upon Brown. Likewise, the testimony of Romulus never explicitly identified Petitioner as a seller of drugs, and in any event was not presented to show that Petitioner had a propensity for criminal activity, but instead explained how Romulus could identify Petitioner as one of the attackers despite his having been bandaged on the day of the attack. In context, then, it is clear that this evidence did not render Petitioner's trial fundamentally unfair, and Petitioner is therefore not entitled to habeas relief on this ground. *Glenn*, 743 F.3d at 407.

**4. Petitioner's Ineffective Assistance of Counsel Claims**

In his remaining claims, Petitioner asserts that he suffered various forms of ineffective assistance of trial counsel. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance

was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

**a. Petitioner's Witness and Pre-Trial Investigation Claims**

In his first series of ineffective assistance claims, Petitioner asserts that his trial counsel failed to investigate several witnesses who Petitioner contends could have provided relevant testimony at his trial. As this Court has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> > a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of

> providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Here, Petitioner contends that counsel failed to investigate the potential for exculpatory testimony from four purported witnesses – Andre Vilkings, Stevie Roman, Elvita Cetoute, and Anderson Alphonse. Petitioner's trial counsel testified at PCR hearings regarding his decisions in this respect, and was found to be a "credible and cogent" witness by the PCR court. As the PCR court explained,

> [Trial counsel] testified that he considered Mr. Roman and Mr. [Vilkings] to be witnesses for the State, and he had ample reason for that conclusion in the multiple statements they had given to the police implicating [Petitioner]. [Trial counsel] also testified that, hypothetically, even if he had interviewed [Roman and Vilkings], and been aware of their recantation [of their statements implicating Petitioner] and their willingness to testify on [Petitioner's] behalf, he would not have put them on the stand at trial. It should be noted that [trial counsel] has no recollection of [Petitioner] asking him to interview these persons or call them as witnesses. [Trial counsel] believed that they would not have been credible witnesses for several reasons: their multiple statements, including sworn testimony, prior to trial that implicated [Petitioner] and therefore would have been the subject of sustained cross-examination and would have been admissible as prior inconsistent statements; the fact that they were both co-defendants in the same attack whose cases had been resolved prior to [Petitioner's trial] and who would therefore appear to a jury to be trying to help a friend at no cost to themselves; and their prior criminal histories. His conclusion . . . was that as a tactical matter their testimony would have been at best of limited or no benefit to [Petitioner] and in all likelihood would have been detrimental. . . .
>
> Ms. Cetoute, unlike Mr. Roman or Mr. [Vilkings], was not mentioned anywhere in the discovery. There is therefore no basis on which to conclude [trial counsel] should have had her

interviewed or should have known she had any knowledge relevant to the case. There is also no evidence to support [Petitioner's] claim that he advised his attorney to interview [her] prior to trial, or that if contacted she would have cooperated given her stated desire to stay out of the matter. More importantly, Ms. Cetoute's version of events is unhelpful to [Petitioner]. [Her] purported testimony – that she saw the victim strike [Petitioner] with a bike, and that [Petitioner] then left the area – directly contradicts [Petitioner's] testimony that he had no motive to attack the victim and is also inconsistent with the version of events recounted by every witness in this case, including those submitted in support of [Petitioner's] PCR. Ms. Cetoute's purported testimony thus lacks credibility. . . .

[Finally,] the testimony of Anderson Alphonse is not relevant to [Petitioner's] PCR. [Petitioner] does not dispute that it was in 2011 – long after his trial concluded – that he encountered Mr. Alphonse at East Jersey State Prison; that Mr. Alphonse was not mentioned in discovery; or that [Petitioner] never mentioned Mr. Alphonse's name to [trial counsel] prior to or during trial. Nor does [Petitioner] demonstrate how [trial counsel] would have uncovered the potential testimony of Mr. Alphonse through reasonable investigation . . .

Moreover, it bears emphasis that [Petitioner] has also failed to meet his burden with respect to the prejudice prong of *Strickland*. . . . Five eyewitnesses – three co-defendants, the niece of the victim, and an uninvolved observer from across the street – testified at trial to [Petitioner's] involvement in the fatal beating of Fletcher Brown. The uninvolved observer was leaving his mother's home at the time of the attack. He observed the entire incident and was a very credible witness. [Petitioner] offers recanting co-defendants with long criminal records, a woman whose belated version of events is totally at odds with every other witness in the case[,] and an individual that [Petitioner] happened to encounter in prison years after the event who just happens to be an exculpatory witness. In many respects, these witnesses' proffered testimony is inconsistent with each other and [with Petitioner's version of events]. In addition, the prior statements of the recanting witnesses would have come into evidence as substantive evidence at trial, and I do not find the recanting witnesses' statements that they recanted prior to trial credible.

(Document 17 attached to ECF No. 14 at 19-22).

Having reviewed the testimony at the PCR hearings, and giving appropriate deference to the PCR court's credibility determinations in light of Petitioner's failure to rebut the presumption that the PCR court's factual findings are correct, *see* 28 U.S.C. § 2254(e)(1), this Court finds that Petitioner has failed to establish either deficient performance or prejudice. For the reasons expressed by the PCR court recounted above, counsel made a reasonable strategic decision not to pursue the testimony of Vilkings and Roman as their testimony would not have been helpful and could well have harmed Petitioner through the admission of their prior statements. Likewise, the testimony of Cetoute was of little, if any, value to Petitioner as it was at odds with his own testimony and the testimony of all of the other witnesses offered from Petitioner or the State. Anderson's testimony, which purportedly came to light out of the blue in 2011, is of no relevance because counsel had no reason to know of his existence at the time of trial. Thus, Petitioner has failed to show that counsel was deficient in not pursuing these witnesses, and in any event has failed to show that he was prejudiced by the failure to call these purported witnesses. The PCR court's rejection of these claims was therefore not contrary to nor an unreasonable application of Supreme Court precedent or the facts at hand, and Petitioner is not entitled to relief on these claims.

Petitioner also contends more generally that counsel failed to adequately investigate and prepare his case prior to trial, and that this failure prevented counsel from presenting a viable defense at trial. In making that argument, however, Petitioner admits that counsel did pursue a defense at trial – a medical defense in which he sought to show that it was an aneurysm, and not Petitioner, that caused the death of Brown. (*See* Document 1 attached to ECF No. 1 at 14-15). Petitioner has utterly failed to show that information – other than the witnesses discussed above – which would have resulted from further investigation, or what defenses, if any, other than the two defenses presented at trial in the form of medical causation testimony and Petitioner's claim that

he was not involved in the attack would have been found with further investigation. Petitioner has thus not shown that he was prejudiced by any lack of investigation into his case on counsel's part, and, indeed, the record suggests that counsel fully explored the discovery in Petitioner's case, and used that to pursue a reasonable defense – the medical causation defense presented at trial. Petitioner has thus failed to show that he was prejudiced, and is not entitled to relief on this ground.

Petitioner's final pre-trial related claim is that counsel failed to adequately prepare him to testify and to provide Petitioner with copies of the discovery to prepare him for trial. As to this latter argument, trial counsel testified at the PCR hearing that Petitioner had a copy of the discovery before he was assigned to represent Petitioner, and the PCR court found that there was evidence in the record in support of that contention. (*See* Document 17 attached to ECF No. 14 at 22). Thus, it appears that Petitioner did have copies of the discovery. Given counsel's testimony that he both met with Petitioner and had video conferences with him, it also appears that counsel did do at least some preparation with Petitioner in advance of the trial. Likewise, the trial record, including counsel's arguments, cross-examinations, and strategic decisions all suggest that counsel had reviewed the discovery and prepared for Petitioner's trial. In any event, as the PCR court found, Petitioner does not show how the outcome of his trial would have been different had counsel engaged in further preparations with him, and he therefore cannot show that he suffered prejudice sufficient to warrant relief under *Strickland*.

Turning to the issue of Petitioner's testimony, Petitioner also fails to explain how the outcome of his trial would have been different had he been more fully prepared to testify on his own behalf at trial. Although Petitioner contends that counsel should have advised him to be less combative on cross-examination and should have given him instruction on how best to present himself at trial, Petitioner fails to show that the outcome of his trial would have likely been

different had he been so instructed on witness stand demeanor. Petitioner's contention that trial counsel should have prevented some issues from arising during his testimony – including his re-entry into the United States with a doctored passport and a discussion of whether he discussed his scar with Kanika Taylor - ignores both that Taylor had already testified regarding Petitioner's boasting about how he got the scar and that the information about the passport had already been admitted into evidence. Counsel's reason for pursuing Petitioner's version of these events on direct examination is therefore clear – it permitted Petitioner to explain these events to the jury in his own terms before those issues inevitably arose on cross-examination. Ultimately, Petitioner has not shown that the outcome of his trial likely would have differed had he been more prepared to testify, and Petitioner's contention that with more preparation he could have somehow focused the jury's attention on his claim that he did not attack Brown and avoid having to answer questions he did not like on cross examination amount to little more than unsupported allegations which are insufficient to warrant habeas relief. Petitioner has thus not shown that he was prejudiced by counsel's alleged failure to more fully prepare him to testify, and Petitioner has not established his entitlement to habeas relief on this claim.

### b. Petitioner's Failure to Object Claims

Petitioner also argues that counsel proved ineffective in failing to object to various testimony, specifically the other crimes evidence discussed above, the testimony of Kanika Taylor in which she testified that Petitioner bragged to her that he had gotten his scar in a fight with a man whose girlfriend Petitioner had assaulted, and testimony regarding Petitioner's reentry into the country using a falsified passport with another man's name upon it. As explained above, the state courts found that the alleged other crimes evidence was admissible at trial, and Petitioner has not

shown that this ruling is contrary to federal law. Thus, any objection to the alleged other crimes evidence would have been without merit, and counsel cannot be ineffective in failing to raise a meritless objection.[2] *See Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be deemed ineffective for failing to raise a meritless claim"); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011).

Petitioner's claim regarding the fraudulent passport evidence fairs no better. As the PCR court found, the passport evidence "was admissible to show [Petitioner's] flight and to show consciousness of guilt" and Petitioner has not shown that any objection to this evidence could have succeeded. Thus, Petitioner could not show prejudice on this ground because the passport evidence was admissible under state law, and any objection to its admission would have been baseless. *Wets*, 228 F.3d at 203; *Aldea*, 450 F. App'x at 152. Even were this not the case, however, Petitioner also cannot show that the "failure" to object to this evidence amounted to deficient performance. During the PCR hearings, counsel "testified that, after consulting with his client and knowing the State would seek a flight charge, he sought out the testimony regarding [Petitioner's] fraudulent passport and illegal [re]entry so that he could argue to the jury that no reasonable person

---

[2] In addition to the direct other crimes evidence discussed above including both testimony that Petitioner was often on the corner "selling stuff" and Petitioner's offer of drugs to the victim's girlfriend before the attack on Brown, Petitioner also contends that counsel, should have objected to testimony that the area in which the attack occurred was known as a high crime area or area in which drugs were often sold. Such testimony is generally admissible under New Jersey law where relevant. *See, e.g., State v. McLean*, 205 N.J. 438, 459 (2011). Because such testimony is admissible, Petitioner has failed to show that an objection to this testimony would have been sustained, especially in light of the fact that Petitioner offered the victim's girlfriend drugs as part of the criminal event for which he was being prosecuted, which makes the officer's testimony that the area was known for drugs and crime relevant. As Petitioner has not shown that any objection to the crime/drug area testimony would have succeeded, and in any event has not shown that success on such a motion would have had an impact upon the outcome of his trial, he has failed to show *Strickland* prejudice, and Petitioner has not shown ineffective assistance of counsel on that basis.

would return to the United States knowing that there was a warrant for his arrest unless he were not guilty" of the charged crime. (Document 17 attached to ECF No. 14 at 23). Thus, counsel did not object to the testimony from the State's witness, and ultimately retread that ground with Petitioner on direct so that he could argue that Petitioner's return, knowing he was subject to an arrest warrant, showed no flight or cognizance of guilt, but confidence that he was not guilty. Thus, this choice was a tactical decision entitled to deference under *Strickland*, and counsel's failure to object to the passport evidence was not deficient performance. 466 U.S. at 689. As Petitioner has neither shown deficient performance nor prejudice, he is not entitled to habeas relief on this ground.

Petitioner also contends that counsel should have objected to testimony from Kanika Taylor in which Taylor testified that Petitioner bragged to her that he had received his facial wounds in a fight with a man who attacked him because he had beaten the man's girlfriend. During the PCR hearings, however, counsel stated that he made a tactical decision not to object to this testimony because he judged the claim – that Petitioner would brag to one woman about having beaten another – was utterly incredible, and that permitting the jury to hear that testimony would lead them to discount her testimony in its entirety– which would have proven a great boon to Petitioner. (*See* Document 17 attached to ECF No. 14 at 23). Thus, counsel made a tactical decision not to object to her testimony, which this Court cannot second guess. *Strickland*, 466 U.S. at 689. Because this amounts to a strategic decision entitled to the Court's deference, Petitioner has failed to show deficient performance, and Petitioner's final objection based ineffective assistance claim is also without merit.

### c. Petitioner's Cumulative Ineffective Assistance Claim

In his final claim, Petitioner contends that, even if counsel's individual alleged errors do not amount to ineffective assistance of counsel in and of themselves, those errors in the aggregate require a finding that he suffered ineffective assistance of trial counsel. Petitioner, however, has utterly failed to establish that he was prejudiced by any of the alleged errors of counsel, either individually or in the aggregate. Because Petitioner has failed to show that he was prejudiced by counsel's actions, he cannot show that he suffered ineffective assistance of counsel, and his cumulative ineffective assistance claim must fail. *Strickland*, 466 U.S. at 687-94. As Petitioner has not shown that he was prejudiced by counsel's representation at trial, it is clear that the state courts' decisions rejecting his ineffective assistance claims are neither contrary to or an unreasonable application of *Strickland*, and Petitioner is therefore not entitled to habeas relief.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because all of Petitioner's habeas claims are without merit for the reasons expressed above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

**IV. CONCLUSION**

     For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.


Dated: January 29, 2018                        ***s/ Susan D. Wigenton***
                                        Hon. Susan D. Wigenton,
                                        United States District Judge